STEPHEN BUSHANSKY, On Behalf of Himself )
and All Others Similarly Situated, ) Case No.
)
Plaintiff, )
)
v. ) **CLASS ACTION COMPLAINT**
)
ONEBEACON INSURANCE GROUP, LTD., T. )
MICHAEL MILLER, LOWNDES A. SMITH, ) **JURY TRIAL DEMANDED**
REID T. CAMPBELL, MORGAN W. DAVIS, )
LOIS W. GRADY, IRA H. MALIS, G. )
MANNING ROUNTREE, PATRICK A. THIELE, )
and KENT D. URNESS, )
)
Defendants, )
)
)

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his

complaint against defendants, alleges upon personal knowledge with respect to himself, and

upon information and belief based upon, *inter alia*, the investigation of counsel as to all other

allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of OneBeacon

Insurance Group, Ltd. ("OneBeacon" or the "Company") against OneBeacon and the members of

OneBeacon's Board of Directors (the "Board" or the "Individual Defendants") for their violations

of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9,

17 C.F.R. 240.14a-9 and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the

Company to Intact Financial Corporation ("Intact"), through Intact's wholly owned subsidiary,

Intact Bermuda Holdings Ltd. ("Holdco"), and Holdco's wholly owned subsidiary, Intact Acquisition Co. Ltd. ("Merger Sub") (the "Proposed Transaction").

2.      On May 2, 2017, OneBeacon issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Intact.  Under the terms of the Merger Agreement, Intact will acquire all of the outstanding shares of OneBeacon for $18.10 per share in cash (the "Merger Consideration").   The Proposed Transaction is valued at approximately $1.7 billion.

3.      On May 24, 2017, OneBeacon filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy"), with the SEC.  The Proxy, which recommends that OneBeacon stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) OneBeacon insiders' potential conflicts of interest; (ii) the sale process leading up to the Proposed Transaction; and (iii) the valuation analyses prepared by OneBeacon's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse") in connection with the rendering of its fairness opinion.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as OneBeacon stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, the Proposed Transaction is designed to unlawfully divest OneBeacon's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the stockholder vote unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. OneBeacon is incorporated in Bermuda and headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

10. Plaintiff is, and has been at all relevant times, a continuous stockholder of OneBeacon.

12. OneBeacon is an exempted Bermuda limited liability company, with its U.S. corporate headquarters located at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441. OneBeacon's common stock is traded on the New York Stock Exchange under the ticker symbol "OB."

13.     Defendant T. Michael Miller ("Miller") has been President and Chief Executive Officer ("CEO") of the Company since October 2006 and a director of the Company since August 2006.

14.     Defendant Lowndes A. Smith ("Smith") has been Chairman of the Board since October 2006.  Defendant Smith is a director, Chair of the Audit Committee and a Member of the Compensation Committee of the board of directors of White Mountains Insurance Group, Ltd. ("White Mountains"), OneBeacon's parent company.

15.     Defendant Reid T. Campbell ("Campbell") has been a director of the Company since October 2006.  Defendant Campbell has been a managing director of White Mountains Capital, Inc. since January 2004 and President of White Mountains Advisors LLC since January 2015.

16.     Defendant Morgan W. Davis ("Davis") has been a director of the Company since 2006.  Defendant Davis is a director and the Non-Executive Chairman of White Mountains.

17.     Defendant Lois W. Grady ("Grady") has been a director of the Company since December 2006.

18.     Defendant Ira H. Malis ("Malis") has been a director of the Company since August 2007.

19.     Defendant G. Manning Rountree ("Rountree") has been a director and CEO of White Mountains since March 1, 2017.  Defendant Rountree previously served as Executive Vice President of White Mountains and President of White Mountains Capital, Inc.

20.     Defendant Patrick A. Thiele ("Thiele") has been a director of the Company since February 2014.

21.     Defendant Kent D. Urness ("Urness") has been a director of the Company since February 2007.

21.     Defendants Miller, Smith, Campbell, Davis, Grady, Malis, Rountree, Thiele and Urness are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22.     Intact is a Canadian corporation with its principal executive offices located at 700 University Avenue, Toronto, Ontario M5G 0A1.  Intact is the largest provider of property and casualty insurance in Canada with nearly $8.0 billion in annual premiums.

23.     Holdco is a Bermuda exempted limited liability company and an indirect wholly owned subsidiary of Intact.

24.     Merger Sub is a Bermuda exempted limited liability company and a wholly owned subsidiary of Holdco.

25.     White Mountains is an exempted Bermuda limited liability company and OneBeacon's parent company.  As of March 29, 2017, White Mountains owns all of the Company's Class B common shares, representing 96.9% of the voting power of the Company's voting securities and approximately 75.7% of the Company's outstanding common shares.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own OneBeacon common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of April 28, 2017, there were 22,986,618 shares of Class A common stock and 71,754,738 shares of Class B common stock issued and outstanding.  All members of the Class may be identified from records maintained by OneBeacon or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

28.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

29.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

31. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background

32. OneBeacon is a specialty property and casualty insurance provider that offers a wide range of insurance products in the U.S. primarily through independent agencies, regional and national brokers, wholesalers and managing general agencies. Historically, the Company offered a range of specialty, commercial and personal products and services. As a result of a series of transactions over the past several years, OneBeacon is now focused exclusively on specialty businesses. The most recent of these transactions was the sale of certain of the Company's run-off business consisting of assets, liabilities and capital related principally to OneBeacon's non-specialty business, which closed on December 23, 2014 ("Runoff Transaction"). With the closing of the Runoff Transaction, OneBeacon completed its transformation into a specialty insurance company.

33. The Company's reportable segments are Specialty Products, Specialty Industries, and Investing, Financing and Corporate. The Specialty Products segment is comprised of ten active underwriting operating segments representing an aggregation based on those that offer distinct products and tailored coverages and services to customers across the United States. The Specialty Industries segment is comprised of six active underwriting operating segments

representing an aggregation based on those that focus on solving the unique needs of a particular customer or industry group. The Investing, Financing and Corporate segment includes the investing and financing activities for OneBeacon on a consolidated basis, and certain other activities conducted through the Company and its intermediate subsidiaries.

34. On May 2, 2017, OneBeacon issued a press release announcing its first quarter 2017 financial results. For the quarter, the Company reported book value per share of $10.91, reflecting a 2.8% increase compared to the first quarter of 2016. Despite some challenges, defendant Miller remained positive, stating:

> The year is off to a good start, with 2.8% growth in book value per share, a 95% combined ratio and solid investment returns. Most of our businesses delivered strong results, from both a top-line and bottom-line perspective. While overall net written premiums were down 8% compared to last year, that variance was driven by risk-selection refinement in our Programs, Entertainment and Healthcare businesses. In the remainder of our businesses, net written premiums were up 3%. While market conditions remain competitive, our positive first-quarter momentum positions us well for the balance of the year.

**The Sale Process**

35. In the fall of 2016, a third party referred to in the Proxy as "Party A" contacted White Mountains indicating an interest in exploring a possible transaction with OneBeacon, with proposed consideration to be paid entirely of Party A stock. Preliminary discussions with Party A terminated in November 2016.

36. At a November 16, 2016 meeting, the Board determined it should continue its preliminary review and development of a potential sale process.

37. On December 13, 2016, the Board directed management to commence a formal process to solicit interest in an acquisition of 100% of OneBeacon's outstanding equity. Following the meeting and at the Board's direction, Credit Suisse contacted 17 entities, including Intact and Party A, to gauge their interest in a potential acquisition of the Company. In

December 2016 and January 2017, OneBeacon executed non-disclosure agreements ("NDAs") with seven potential acquirers, including Intact. The Proxy fails to disclose whether these NDAs contain standstill provisions that operate to preclude any of the potential acquirers from submitting a topping bid for the Company.

38.     From December 2016 to February 2017, defendant Miller held meetings with the CEO of Intact and five other potential acquirers, including those referred to in the Proxy as "Party B," "Party C," and "Party D."

39.     In January 2017, one of the seven potential acquirers who had executed an NDA informed Credit Suisse it was no longer interested in pursuing a transaction. Thereafter, Credit Suisse sent first round process letters to the six remaining bidders requesting preliminary indications of interest be submitted no later than February 13, 2017.

40.     In February 2017, two parties that had previously executed NDAs informed the Company they were no longer interested in pursuing a transaction with OneBeacon.

41.     On February 13, 2017, Intact, Party B, Party C and Party D submitted preliminary indications of interest. Intact proposed an indicative purchase price of between $18.00 and $20.00 per share in cash. Party B proposed an aggregate equity valuation that implied an indicative purchase price of $17.13 per share in cash. Party C proposed an indicative purchase price of $20.00 per share, entirely in Party C stock. Party D proposed an indicative purchase price of $18.00 per share.

42.     On February 16 and February 17, 2017, Party D met with defendant Miller to discuss due diligence and Party D's interest in a transaction with OneBeacon.

43.     Throughout February and March 2017, OneBeacon management held discussions with White Mountains regarding the proposed terms of a retention bonus pool for OneBeacon

employees, and White Mountains indicated what it would support, in its capacity as a OneBeacon shareholder. The proposed terms of the retention bonus pool were shared with the remaining bidders in late March 2017, but the Proxy fails to disclose the terms that were shared.

44.     At a February 28, 2017 meeting, following review of the first round indications of interest, the Board determined that all four parties should be invited to proceed to the second round. The Board also established a transaction committee comprised of defendants Miller, Smith, Campbell and Thiele, as well as David T. Foy ("Foy"), who resigned from the Board on May 17, 2017 (the "Transaction Committee"). The Board fails to disclose why it allowed Foy and defendants Smith and Campbell to serve on the Transaction Committee, given their affiliations with White Mountains.

45.     On March 3, 2017, Credit Suisse sent a second round process letter to Intact, Party B, Party C and Party D, requesting submissions of markups of OneBeacon's forms of merger agreement and voting agreement with the White Mountains shareholders by March 29, 2017, and submissions of final proposals by April 4, 2017.

46.     Between March 7 and March 14, 2017, OneBeacon held due diligence sessions and meetings with Intact, Party B, Party C, and Party D. On March 10 and March 20, 2017, Party D and Party C, respectively, informed the Company that they had decided not to continue pursuing a potential transaction with OneBeacon.

47.     In late March 2017, Intact informed Credit Suisse that it could not commit to the high-end of the indicative purchase price submitted in its preliminary indication of interest.

48.     On April 4, 2017, Party B submitted a revised proposal to acquire OneBeacon for $16.36 per share in cash. The bid was subject to certain contingencies, including the requirement for OneBeacon to find a credit-worthy counterparty to indemnify Party B for certain matters

Party B and its representatives had identified in due diligence, and for the surplus notes issued to OneBeacon in connection with the 2014 sale of its non-specialty business to Armour Group Holdings Limited ("Surplus Notes") to be sold in exchange for or otherwise replaced with cash prior to the closing of the merger in an amount equal to at least the carrying value of such notes as of December 31, 2016. That same day, Intact also submitted a revised proposal to acquire the Company for $18.00 per share in cash, contingent on White Mountains purchasing the Surplus Notes in connection with the closing of the merger in an amount equal to the carrying value of such notes as of December 31, 2016. White Mountains informed OneBeacon that it would not be willing to purchase the Surplus Notes.

49.     On April 10, 2017, Intact orally submitted a revised bid to acquire the Company for $17.75 per share, $0.25 *less* than Intact's April 4 proposal, after removing the contingency related to the Surplus Notes.

50.     On April 11, 2017, Party B submitted a revised bid to acquire OneBeacon for $15.59 per share, after removing the contingencies related to indemnification and the Surplus Notes identified in its April 1 proposal.

51.     On April 13 and 14, 2017, defendant Miller and Charles Brindamour ("Brindamour"), Intact's CEO, held a series of in-person meetings and telephone calls during which defendant Miller encouraged Brindamour to increase Intact's proposal. Intact agreed to increase its proposed purchase price only if OneBeacon agreed to pay a termination fee equal to 5.0% of the Company's equity value, reimburse Intact's expenses up to a cap of 1.0% of OneBeacon's equity value, and reimburse Intact's expenses related to entering into certain hedging transactions up to a cap of $5.0 million. Intact and OneBeacon agreed to discuss a

transaction on such terms for a purchase price of $18.10 per share, without any requirement that OneBeacon sell the Surplus Notes.

52.     Following these discussions, defendant Miller was authorized to discuss with Intact issues relating to post-closing employment, a retention bonus pool and the treatment of equity awards.

53.     Between April 15 and May 2, 2017, the parties and their advisors negotiated the terms of the Merger Agreement, voting agreement and other transaction documents.

54.     On May 2, 2017, Party B informed Credit Suisse it would not proceed without specific price guidance and was withdrawing its previously submitted proposal.

55.     That same day, Credit Suisse rendered its fairness opinion and the Board approved the Merger Agreement.  OneBeacon and Intact then executed the Merger Agreement and White Mountains and Intact executed the voting agreement.

**The Proposed Transaction**

56.     On May 2, 2017, OneBeacon issued a press release announcing entry into the Merger Agreement, which stated in relevant part:

> HAMILTON, Bermuda, May 2, 2017 -- OneBeacon Insurance Group, Ltd. (NYSE: OB) has entered into a definitive merger agreement under which Intact Financial Corporation (TSX: IFC) will acquire all outstanding OneBeacon shares for $18.10 in cash per share. The $18.10 per share acquisition price is 1.65 times OneBeacon's book value per share as of March 31, 2017, and represents a 14% premium to the company's closing stock price on the NYSE of $15.89 as of May 1, 2017 and a 15% premium to the volume weighted average share price over the last 30 days. This represents aggregate cash consideration of approximately $1.7 billion. In addition, OneBeacon debt of approximately $275 million will remain outstanding.
>
> This transaction will create a North American leader in specialty insurance, with over $1.5 billion of annual premiums. Furthermore, it bolsters Intact's Canadian business with new products and cross-border capabilities, and better positions the company to compete with North American insurers.

Mike Miller, CEO of OneBeacon, said, "***We are all very excited to join the Intact family***. The opportunity to leverage Intact's deep technical, financial and technology capabilities makes this combination the perfect next step in the OneBeacon journey. Together, we will accelerate our pursuit in creating a leading specialty insurer in North America. We look forward to working with our U.S. and Canadian independent agents and brokers to deliver market-leading capabilities to our targeted customers. Both companies are dedicated to ensuring a seamless transition and look forward to profitably growing our specialty portfolio going forward."

Charles Brindamour, CEO of Intact, said, "Today, we've taken an important step in building a world-class P&C insurer. The addition of OneBeacon is creating a leading North American specialty lines insurer focused on small-to-midsize businesses. OneBeacon is a strong strategic fit for Intact, with deep expertise in commercial and specialty lines, and shared values. We see significant growth potential from the combination of our specialty lines operations and ***we look forward to welcoming OneBeacon employees to the Intact family***."

OneBeacon was formed in 2001 when White Mountains Insurance Group, Ltd. acquired the former CGU's U.S. property-casualty business from Aviva plc. In 2006, White Mountains sold 27.6 million of OneBeacon's common shares in an initial public offering, or 27.6% of OneBeacon's common shares at the time of the initial public offering. As of May 2, 2017, White Mountains owned 75.7% of OneBeacon's common shares, representing 96.9% of the voting power. White Mountains has agreed to vote in favor of the transaction.

The transaction, which was unanimously approved by OneBeacon's board of directors, is subject to regulatory and shareholder approvals and other customary closing conditions, and is expected to close in the fourth quarter of this year. OneBeacon expects to continue paying regular quarterly dividends consistent with past practice prior to closing. Completion of the merger is not subject to any financing conditions.

Emphasis added.

## Insiders' Interest in the Proposed Transaction

57.    Intact and OneBeacon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of OneBeacon.

58. Notably, it appears that members of Company management have secured positions for themselves following completion of the Proposed Transaction. Under the Proxy section entitled "*New CEO Arrangement*," the Proxy states that "***Intact and Mr. Miller have agreed upon certain terms regarding Mr. Miller's terms of employment following the merger***, which will be memorialized in an employment agreement." Proxy at 56. Further, in OneBeacon's May 2, 2017 press release announcing the Proposed Transaction, defendant Miller states, "We are all very excited to join the Intact family." Intact's CEO Brindamour is also quoted as saying, "We see significant growth potential from the combination of our specialty lines operations and *we look forward to welcoming OneBeacon employees to the Intact family*."

59. Moreover, if they are terminated in connection with the merger, OneBeacon's named executive officers will receive substantial severance benefits, including cash payments and the accelerated vesting of their service-vesting restricted shares, service-vesting restricted stock units, performance shares and performance units. The transaction-related compensation each named executive officer stands to receive is set forth in the following table:

| Name | Cash (1) | Equity (2) | Perquisites/ Benefits (3) | Other (4) | Total (5) |
|---|---|---|---|---|---|
| T. Michael Miller | $ 3,750,000 | $ 8,797,156 | $ 71,498 | $ 10,000,000 | $ 22,618,654 |
| Paul H. McDonough | 2,125,000 | 2,088,219 | 72,163 | 2,700,000 | 6,985,382 |
| Paul J. Brehm | 2,125,000 | 2,259,626 | 71,495 | 3,000,000 | 7,456,121 |
| Dennis A. Crosby | 2,550,000 | 4,386,595 | 71,498 | 4,000,000 | 11,008,093 |
| Maureen A. Phillips | 1,593,750 | 1,437,872 | 50,000 | 1,200,000 | 4,281,622 |

## The Proxy Contains Material Misstatements or Omissions

60. The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to OneBeacon's stockholders. The Proxy misrepresents or omits material

information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

61. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) OneBeacon insiders' potential conflicts of interest; (ii) the sale process leading up to the Proposed Transaction; and (iii) the valuation analyses prepared by Credit Suisse in connection with the rendering of its fairness opinion. Accordingly, OneBeacon stockholders are being asked to vote for the Proposed Transaction or exercise their appraisal rights without all material information at their disposal.

***Material Omissions Concerning OneBeacon Insiders' Potential Conflicts of Interest***

62. The Proxy fails to disclose material information concerning the potential conflicts of interest faced by OneBeacon management and the Board.

63. The Proxy sets forth, in part, that "Intact and Mr. Miller have agreed upon certain terms regarding Mr. Miller's terms of employment following the merger, which will be memorialized in an employment agreement." In addition, in the Company's May 2, 2017 press release announcing the Merger Agreement, defendant Miller was quoted as stating, "We are all very excited to join the Intact family." Intact CEO Brindamour was also quoted as stating, "We see significant growth potential from the combination of our specialty lines operations and we look forward to welcoming OneBeacon employees to the Intact family." However, the Proxy completely fails to set forth all of the employment related discussions and negotiations that occurred between Intact and OneBeacon's executive officers, including defendant Miller. The Proxy further fails to disclose whether any of Intact's prior proposals or indications of interest

mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

64.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 56 of the Proxy:

**New CEO Arrangement**

Intact and Mr. Miller have agreed upon certain terms regarding Mr. Miller's terms of employment following the merger, which will be memorialized in an employment agreement. The employment agreement will provide that Mr. Miller will be located in Minneapolis, Minnesota, and will serve in a position to be mutually agreed upon. Mr. Miller's initial annual base salary will be $750,000. He will also be eligible to receive an annual bonus, with a target amount equal to 100% of his annual base salary and a maximum cap equal to 200% of his annual base salary. He will be allowed to use the corporate aircraft for personal use, subject to an annual maximum cap of $125,000.

(b)     From page 34 of the Proxy:

Following these discussions, Mr. Miller was authorized to discuss with Intact issues relating to post-closing employment, a retention bonus pool and the treatment of equity awards in the merger that Intact indicated needed to be resolved prior to signing the merger agreement.

**Material Omissions Concerning the Sale Process**

66.     The Proxy also fails to disclose or misstate material information relating to the sale process leading up to the Proposed Transaction, including:

(a)     whether the NDAs OneBeacon entered into with six potential acquirers

16

(excluding Intact) in December 2016 and January 2017 contained standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these industry participants from making a topping bid for the Company;

(b)     Whether the Transaction Committee formed by the Board has a charter and, if so, the specific duties of the Transaction Committee set forth in the charter;

(c)     Whether the Board discussed the propriety of placing directors affiliated with White Mountains on the Transaction Committee;

(d)     The details of the "proposed terms of the retention bonus pools [that] were shared with the remaining bidders in late March 2017";

(e)     The details of the respective Surplus Notes contingencies included in Party B's April 1, 2017 proposal and Intact's April 4, 2017 proposal, including the estimated price of the Surplus Notes if quantified;

(f)     In connection with Party B's May 2, 2017 communication to Credit Suisse that "Party B would not proceed without specific price guidance," whether defendant Miller or any of the Company's representatives informed Party B that "OneBeacon would not agree to any transaction at a purchase price of less than $18.10 per OneBeacon share" – the specific price guidance defendant Miller provided to Intact's CEO Brindamour during their conversations on April 13 and 14, 2017.

67.     The omission of this information renders statements in the "Background of the Merger" section of the Proxy false and/or materially misleading in contravention of the Exchange Act:

***Material Omissions Concerning OneBeacon's Management Forecasts***

68.     With respect to OneBeacon's management forecasts provided by OneBeacon management and relied upon by Credit Suisse in performing its financial analyses, the Proxy sets

forth the Company's projected estimated distributable cash flows to stockholders. The Proxy fails, however, to disclose the amount of capital required to support a targeted "Best's Capital Adequacy Ratio" plus an estimated safety margin that were subtracted from the Company's GAAP capital to derive the estimated distributable cash flows to stockholders. The Proxy further fails to disclose the "Best's Capital Adequacy Ratio" that was targeted.

69.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 49 of the Proxy:

The following is a summary of the OneBeacon management forecasts:

| ($ in millions, except per share data) | 2017E | 2018E | 2019E | 2020E | 2021E | 2022E |
|---|---|---|---|---|---|---|
| Gross premiums written | $    1,300 | $    1,456 | $    1,547 | $    1,640 | $    1,693 | $    1,746 |
| Net premiums written | 1,146 | 1,289 | 1,371 | 1,453 | 1,502 | 1,550 |
| Net income [1] | 95 | 125 | 149 | 168 | 183 | 193 |
| Dividends to shareholders [2] | 79 | 79 | 79 | 79 | 79 | 79 |
| Combined ratio [3] | 96.1% | 93.9% | 92.8% | 92.2% | 91.8% | 91.8% |
| Earnings per share [4][5] | $    1.00 | $    1.32 | $    1.58 | $    1.78 | $    1.93 | $    2.03 |
| Book value per share [4][6] | 10.96 | 11.45 | 12.19 | 13.13 | 14.22 | 15.42 |

(1) Represents net income from continuing operations (after deductions for net income attributable to non-controlling interests). In materials provided to potential acquirers, OneBeacon provided forecasts representing net income from continuing operations (before deductions for net income attributable to non-controlling interests) of $96 million for 2017E, $127 million for 2018E, $151 million for 2019E, $170 million for 2020E, $185 million for 2021E and $194 million for 2022E.

(2) Represents ordinary quarterly dividends of $0.21 per OneBeacon share paid to shareholders, consistent with past practice, calculated using 94.3 million OneBeacon shares outstanding as of 12/31/2016, and reflected in forecasted book value per share. OneBeacon also projected estimated distributable cash flows to shareholders, which represents (a) OneBeacon's GAAP capital, *minus* (b) the amount of capital required to support a targeted Best's Capital Adequacy Ratio plus an estimated safety margin—totaling $94 million for 2017E (after deduction

18

of the ordinary quarterly dividend paid in March of 2017), $75 million for 2018E, $109 million for 2019E, $129 million for 2020E, $127 million for 2021E and $142 million for 2022E.

(3) Represents (a) the ratio of the GAAP measures incurred loss and loss adjustment expenses to earned premiums *plus* (b) the ratio of the GAAP measures policy acquisition and other underwriting expenses to earned premiums. In materials provided to potential acquirers, OneBeacon provided forecasts representing a combined ratio of 95.9% for 2017E, reflecting the exclusion of certain exited underwriting lines.

(4) Earnings per share and book value per share for 2017E-2022E calculated using 94.7 million OneBeacon shares outstanding as of 3/31/2017. In materials provided to potential acquirers, OneBeacon provided forecasts representing earnings per share and book value per share for 2017-2022E calculated using 94.3 million OneBeacon shares outstanding as of 12/31/2016.

(5) In materials provided to potential acquirers, OneBeacon provided forecasts representing earnings per share based on net income from continuing operations (before deductions for net income attributable to non-controlling interests) of $1.02 for 2017E, $1.34 for 2018E, $1.60 for 2019E, $1.80 for 2020E, $1.96 for 2021E and $2.06 for 2022E.

(6) In materials provided to potential acquirers, OneBeacon provided forecasts representing basic book value per share excluding non-controlling interests of $11.00 for 2017E, $11.50 for 2018E, $12.24 for 2019E, $13.18 for 2020E, $14.28 for 2021E and $15.48 for 2022E.

### *Material Omissions Concerning Credit Suisse's Financial Analyses*

70. The Proxy describes Credit Suisse's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Credit Suisse's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, OneBeacon's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Credit Suisse's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights. This omitted information, if

disclosed, would significantly alter the total mix of information available to OneBeacon's stockholders.

71.     The Proxy fails to disclose various material elements of the financial analyses performed by Credit Suisse.  For example, Credit Suisse performed a *Selected Public Companies Analysis* that was presented to the Board, yet the Proxy fails to disclose the individual multiples for each of the selected public companies analyzed by Credit Suisse, as well as the financial performance metrics for each selected company.

72.     Similarly, Credit Suisse performed a *Selected Precedent Transaction Analysis* that was presented to the Board, yet the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by Credit Suisse, as well as any benchmarking analyses Credit Suisse performed for OneBeacon in relation to the target companies.

73.     Finally, with respect to Credit Suisse's *Dividend Discount Analysis*, the Proxy fails to disclose (i) the inputs used to derive the range of discount rates of 5.0% to 7.5%; (ii) Credit Suisse's basis for applying book value multiples ranging from 1.30x to 1.70x; and (iii) the implied perpetuity growth rates resulting from the analysis.

74.     Without such undisclosed information, OneBeacon stockholders cannot evaluate for themselves whether the financial analyses performed by Credit Suisse were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Credit Suisse's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek to exercise their appraisal rights.

75.     The omission of this information renders the following statements in the Proxy false and/or materially misleading in contravention of the Exchange Act:

(b)     From pages 43-46 of the Proxy:

*Selected Public Companies Analysis.*     Credit Suisse reviewed publicly available financial and stock market information of OneBeacon and the following 10 selected companies that Credit Suisse viewed as generally relevant as publicly traded companies with operations in the U.S. commercial property and casualty insurance industry (which we refer to collectively as the "selected companies"):

- Assurant, Inc.

- CNA Financial Corporation

- Global Indemnity Limited

- James River Group Holdings, Ltd.

- Markel Corporation

- RLI Corp.

- Selective Insurance Group, Inc.

- The Navigators Group, Inc.

- United Fire Group, Inc.

- W. R. Berkley Corporation

Credit Suisse reviewed, among other information, closing share prices on April 28, 2017 as multiples of fully diluted latest quarter book value per share and tangible book value per share, including accumulated other comprehensive income, and calendar years 2017 and 2018 estimated earnings per share (which we refer to as "EPS"). Financial data of the selected companies were based on publicly available Wall Street research analysts' estimates, public filings and other publicly available information. Financial data of OneBeacon was based on the OneBeacon management forecasts and other estimates, Wall Street research analysts' estimates and public filings.

The overall low to high latest quarter book value per share and latest quarter tangible book value per share multiples observed for the selected companies were 0.92x to 3.01x (with a median of 1.50x) and 0.96x to 3.26x (with a median of

1.79x), respectively. The overall low to high calendar year 2017 and calendar year 2018 estimated EPS multiples observed for the selected companies were were 14.3x to 37.9x (with a median of 21.8x) and 13.4x to 36.9x (with a median of 20.3x), respectively. Credit Suisse then applied selected ranges of latest quarter book value per share and latest quarter tangible book value per share multiples of 1.30x to 1.70x and 1.35x to 1.80x, respectively, derived from the selected companies to corresponding data of OneBeacon. Credit Suisse also applied selected ranges of calendar year 2017 and calendar year 2018 estimated EPS multiples of 16.0x to 22.0x and 15.0x to 22.0x, respectively, derived from the selected companies to the calendar year 2017 and calendar year 2018 estimated net income of OneBeacon based both on publicly available Wall Street research analysts' estimates and the OneBeacon management forecasts. This analysis indicated the following approximate implied per share equity value reference ranges for OneBeacon, as compared to the merger consideration:

| Implied Per Share Equity Value Reference Ranges Based on: | | | | Merger Consideration |
|---|---|---|---|---|
| Latest Quarter Book Value Per Share | | Latest Quarter Tangible Book Value Per Share | | |
| $14.18 - $18.54 | | $14.71 - $19.62 | | $18.10 |
| Wall Street Research Analysts' Estimates | | OneBeacon Management Forecasts | | |
| CY 2017E Net Income | CY 2018E Net Income | CY 2017E Net Income | CY 2018E Net Income | |
| $11.20 - $15.40 | $10.50 - $15.40 | $15.96 - $21.94 | $19.85 - $29.12 | $18.10 |

*Selected Precedent Transactions Analysis.*    Credit Suisse reviewed publicly available financial information relating to the following 17 selected transactions that Credit Suisse viewed as generally relevant involving target companies with operations in the U.S. commercial property and casualty insurance industry in the U.S. with transaction values of $500 million to $15 billion (which we refer to collectively as the "selected transactions"):

| Announcement Date | Acquirer | Target |
|---|---|---|
| 12/18/16 | • Fairfax Financial Holdings Limited | • Allied World Assurance Company Holdings, AG |
| 12/05/16 | • Liberty Mutual Holding Company Inc. | • Ironshore Inc. |
| 10/05/16 | • Sompo Holdings, Inc. | • Endurance Specialty Holdings Ltd. |
| 06/10/15 | • Tokio Marine Holdings, Inc. | • HCC Insurance Holdings, Inc. |
| 05/03/15 | • Fosun International Limited | • Ironshore Inc. |
| 06/23/14 | • Validus Holdings, Ltd. | • Western World Insurance Group, Inc. |
| 09/14/10 | • ACE Limited | • Rain and Hail Insurance Service, Inc. |
| 04/16/10 | • QBE Insurance Group Limited | • NAU Country Insurance Company |

| 02/18/10 | • | Fairfax Financial Holdings Limited | • | Zenith National Insurance Corp. |
| 12/22/08 | • | Munich Re Group | • | HSB Group, Inc. |
| 07/23/08 | • | Tokio Marine Holdings, Inc. | • | Philadelphia Consolidated Holding Corp. |
| 06/30/08 | • | Allied World Assurance Company Holdings, Ltd | • | Darwin Professional Underwriters, Inc. |
| 04/23/08 | • | Liberty Mutual Insurance Company | • | Safeco Corporation |
| 10/17/07 | • | Munich Re Group | • | The Midland Company |
| 06/11/07 | • | D. E. Shaw Group | • | James River Group, Inc. |
| 05/07/07 | • | Liberty Mutual Insurance Company | • | Ohio Casualty Corporation |
| 01/04/07 | • | QBE Insurance Group Limited | • | Winterthur U.S. Holdings, Inc. |

Credit Suisse reviewed, among other information, transaction values of the selected transactions, calculated as the purchase prices paid for the target companies, as multiples, to the extent publicly available, of such target companies' latest quarter book value, tangible book value and latest 12 months net income. Financial data of the selected transactions were based on public filings and other publicly available information. Financial data of OneBeacon was based on the OneBeacon management forecasts and other estimates and public filings.

The overall low to high latest quarter book value, latest quarter tangible book value and latest 12 months net income multiples observed for the selected transactions were 1.25x to 2.81x (with a median of 1.59x), 1.31x to 2.85x (with a median of 1.81x) and 4.5x to 41.8x (with a median of 14.4x), respectively. Credit Suisse then applied selected ranges of latest quarter book value and latest quarter tangible book value multiples of 1.30x to 1.90x and 1.40x to 2.00x, respectively, derived from the selected transactions to the latest quarter book value and latest quarter tangible book value of OneBeacon (in each case, as of March 31, 2017), excluding outstanding intangible assets and non-controlling interests per OneBeacon management, and applied a selected range of latest 12 months net income multiples of 14.0x to 25.0x derived from the selected transactions to the latest 12 months net income and the latest 12 months normalized net income from continuing operations of OneBeacon (in each case, as of March 31, 2017). This analysis indicated the following approximate implied per share equity value reference ranges for OneBeacon, as compared to the merger consideration:

| Implied Per Share Equity Value Reference Ranges Based on: | | | | Merger Consideration |
|---|---|---|---|---|
| Latest Quarter Book Value Per Share | Latest Quarter Tangible Book Value Per Share | LTM As-Reported Net Income Per Share | LTM Continuing Operations Net Income Per Share | |
| $14.18 - | $15.26 - | $13.76 - | $13.75 - | $18.10 |

| | | | |
|---|---|---|---|
| $20.72 | $21.80 | $24.57 | $24.55 |

*Dividend Discount Analysis.* Credit Suisse performed a dividend discount analysis of OneBeacon to calculate the estimated present value of the distributable cash flows that OneBeacon was forecasted to generate during the fiscal years ending December 31, 2017 through the fiscal year ending December 31, 2022, excluding dividends paid by OneBeacon during the first quarter of fiscal year 2017, based on the OneBeacon management forecasts. Credit Suisse calculated terminal values for OneBeacon by applying to OneBeacon's estimated book value as of December 31, 2022 a selected range of book value multiples of 1.30x to 1.70x. The present values (as of May 2, 2017) of the distributable cash flows and terminal values were then calculated using a selected range of discount rates of 5.0% to 7.5%. This analysis indicated the following approximate implied per share equity value reference range for OneBeacon, as compared to the merger consideration:

| Implied Per Share Equity Value Reference Range | Merger Consideration |
|---|---|
| $16.90 - $22.79 | $18.10 |

76. Defendants' failure to provide OneBeacon stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

54. Plaintiff repeats all previous allegations as if set forth in full.

55. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

57. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. The Proxy misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor, and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

58. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

59. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

60. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

61. Plaintiff repeats all previous allegations as if set forth in full.

62. The Individual Defendants acted as controlling persons of OneBeacon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of OneBeacon and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

65.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

66.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of OneBeacon, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to OneBeacon stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.


DATED: June 2, 2017


*Counsel for Plaintiff*

ALTMAN & IZEK
By /s/ Adam Altman
Douglas B. Altman (13854X)
Adam M. Altman (0393515)
901 North Third Street
Suite 140
Minneapolis, MN 55401
Telephone: (612) 335-3700
Fax: (612) 335-3701

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel.: (212) 682-3025
Fax: (212) 682-3010

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned certifies as follows:

1.  I have reviewed a draft of the complaint in this matter against OneBeacon Insurance Group, Ltd. ("OneBeacon") and others and would authorize the filing thereof, if necessary.

2.  I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this lawsuit.

3.  I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  I have been, at all relevant times stated in the complaint, the holder of 200 shares of OneBeacon common stock.

5.  I have not sought to serve or served as a class representative under the federal securities laws in the last three years, other than as listed below (if any):

*In re QR Energy LP Unitholder Litigation*, Lead Case No. 4:14-cv-02195 (S.D.T.X.)

6.  I will not accept any payment for serving as a representative party beyond the undersigned's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.

*stephen bushansky*
Stephen Bushansky (Jun 2, 2017)
Stephen Bushansky